IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHNNI A. LUNDY, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:07-CV-205-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Johnni A. Lundy filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Lundy applied for SSI benefits on August 28, 2003, and disability insurance benefits on September 12, 2003, alleging disability commencing August 28, 2003, due to knee and back impairments. (Tr. 65, 76, 243). After the Social Security Administration denied her applications for benefits both initially and on reconsideration, Lundy requested a hearing before an administrative law judge (the "ALJ"). ALJ James A. Wendland

held a hearing on October 31, 2005, which Lundy attended with counsel. (Tr. 330). On November 18, 2005, the ALJ issued a decision that Lundy was not disabled for purposes of the Social Security Act because she was capable of making a successful adjustment to work existing in significant numbers in the national economy. (Tr. 17-25). The Appeals Council denied Lundy's request for review, leaving the ALJ's decision to stand as the Commissioner's final decision. (Tr. 5).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant

from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may not reweigh the evidence or substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

Whether the Commissioner's decision at Step Five of the sequential evaluation process is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD[1]

The ALJ found that Lundy had not engaged in substantial gainful activity since August 28, 2003, and that she had the following severe impairments: hypertension, degenerative joint disease, chronic obstructive pulmonary disease, and obesity. The ALJ found that Lundy had no medically determinable impairments that met or equaled the criteria of any listed impairment. (Tr. 23). Proceeding with the sequential evaluation process, the ALJ found that Lundy had the residual functional capacity for light work, limited to jobs not requiring her to stoop, balance, crouch, crawl, kneel, or climb stairs more than occasionally; climb scaffolds, ladders, or ropes; sit without the occasional opportunity to stand; push or pull with her feet more than occasionally; work at unguarded heights or near unguarded hazardous equipment; be exposed to excessive dust, fumes, or gases more than incidentally; or be exposed to extreme temperatures and high humidity. (Tr. 24).

The ALJ presented Lundy's functional limitations to a vocational expert through hypothetical questions propounded during the administrative hearing. The vocational expert testified that someone with these limitations could not perform Lundy's past relevant work as a cook, home health attendant, and nurse's aide, (Tr. 348), which were classified as semi-skilled jobs requiring light to medium exertion, but there would be other work available in the national economy in significant numbers. Examples included courtesy booth cashier, auto self-service attendant, and bill collector.

---

[1] Extensive review of the administrative record is unnecessary. Lundy does not dispute the ALJ's findings at the first four steps of the sequential evaluation process and limits her challenge to the ALJ's development of the vocational evidence.

The vocational expert testified that all of these positions were semi-skilled. (Tr. 348). Based on the vocational expert's testimony, as well as Lundy's age, education, and work history, the ALJ found Lundy was capable of performing a significant number of jobs available in the national economy, and therefore, she was not disabled. (Tr. 23).

D.  DISCUSSION

Lundy asserts that the ALJ's decision is not supported by substantial evidence and the Commissioner did not meet his burden to establish the existence of other work she can perform. Lundy contends that the ALJ erred in declaring that the transferability of acquired work skills was not an issue, and compounding this error, the ALJ failed to ask the vocational expert about any skills that Lundy had acquired in her previous work and whether these skills could be applied to the other jobs that the vocational expert had identified.

Transferability of skills becomes an issue when severe impairments are present and not per se disabling, but prevent the return to past relevant work. SOCIAL SECURITY RULING 82-41. At the fifth step in the sequential evaluation process, the Commissioner must find a claimant is capable of making an adjustment to other work, otherwise the claimant is considered disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The ability to adjust to other work depends on the claimant's residual functional capacity and the vocational factors of age, education, and work experience. *See* 20 C.F.R. §§ 404.1560(c), 416.960(c). Transferability of skills depends largely on the similarity of occupationally significant work activities among different jobs. *Jeffcoat v. Secretary of Health and Human Servs.*, 910 F. Supp. 1187 (E.D. Tex. 1995); 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). If the claimant has acquired skills through her past work, but cannot use those skills in other skilled

or semi-skilled work, the Commissioner will treat the claimant's background as unskilled. 20 C.F.R. §§404.1565(a), 404.1568(d), 416.965(a), 416.968(d); SOCIAL SECURITY RULING 82-41.

The ALJ found that transferability was not at issue in light of Lundy's age, education, and work experience. (Tr. 22). Lundy was born October 19, 1962, and was considered a younger individual (defined as ages 18-49) at all times relevant to the ALJ's decision. (Tr. 65). *See* 20 C.F.R. §§ 404.1563(c), 416.963(c); 20 C.F.R. Part 404, Subpart P, app. 2, §200(h)(1). For younger claimants, age generally does not seriously affect the claimant's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c), 416.963(c). Lundy also graduated high school in 1980 and obtained certification as a nurse's aide in 1992. (Tr. 82). A person with a high school education or greater is generally considered capable of performing semi-skilled through skilled work. 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). This principle is illustrated in Lundy's past relevant work, which was semi-skilled in nature. (Tr. 346-47). *See* SOCIAL SECURITY RULING 83-10 (noting that type of responsibilities that claimant had when working is relevant to evaluation of educational abilities).

According to the Medical-Vocational Guidelines, a person of Lundy's age and education level is considered "not disabled" regardless of the presence of transferable skills acquired from previous work experience. *See* 20 C.F.R. Part 404, Subpart P, app. 2, Table No. 2, Rules 202.20-202.22. But because Lundy has both exertional and non-exertional limitations, the Guidelines cannot be used to direct a conclusion of "disabled" or "not disabled" in this case, and instead are used as a framework in considering how the claimant's work capability is further diminished because of jobs that would be contraindicated by existing non-exertional limitations. 20 C.F.R. Part 404, Subpart P, app. 2, § 200.00(e)(2). In adhering to this rule, the ALJ stated that he was using

Rule 202.21 of the Guidelines as a framework for his decision. (Tr. 22). Rule 202.21 specifies that a younger individual with a high school education, skilled or semi-skilled work experience, *but no transferable skills*, and a maximum sustained work capacity limited to light work is not disabled. 20 C.F.R. Part 404, Subpart P, app. 2, Table No. 2, Rule 202.21.

Lundy does not challenge the accuracy of the ALJ's assessment of her age, educational level, or work history, but asserts that transferability was at issue because the vocational expert identified only semi-skilled occupations within Lundy's residual functional capacity.[2] (Tr. 348). A claimant's residual functional capacity alone will never establish the capability for skilled or semiskilled work. SOCIAL SECURITY RULING 83-10. The ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work.[3] *Id*.

The ALJ did not question the vocational expert about the skills that Lundy had acquired from her past relevant work that would transfer to the job duties of a courtesy booth cashier, auto self-service attendant, or bill collector, nor is there evidence that Lundy had recently completed

---

[2] Consistent with the vocational expert's testimony, the Dictionary of Occupational Titles (DOT) identifies the jobs of courtesy booth cashier and bill collector as requiring a specific vocational preparation (SVP) level of 4, while the job of self-service-station attendant has an SVP level of 3. DICTIONARY OF OCCUPATIONAL TITLES §§ 211.467-010, 241.367-010, 915.477-010 (rev. 4th ed. 1991). SVP level is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *See id.* app. C. Unskilled work corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. *See id*.; SOCIAL SECURITY RULING 00-4p.

[3] To be recent education that provides for direct entry into the workplace, there should be little time lapse between the completion of formal education and the date the case is adjudicated, and the content of the education should be such that it enables the individual to begin performing the job duties of an identifiable occupation with minimal job orientation. *See* SOCIAL SECURITY RULING 83-10 (explaining the direct entry criteria for purposes of the Medical-Vocational Guidelines).

education that would allow for direct entry into any of these occupations. Nonetheless, the Commissioner asserts that Lundy's general education level alone is sufficient evidence of her ability to perform a different semi-skilled occupation from work she did in the past. This argument is unpersuasive.

The administrative regulations and rulings recognize education and work experience as distinct concepts. Under the regulations, a person's education level refers to formal schooling or other training that contributes to the ability to meet vocational requirements, such as reasoning, language, and arithmetic skills. 20 C.F.R. §§ 404.1564, 416.964. Work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. §§ 404.1565, 416.965. Education level may be an indicator of a person's vocational capacity, but a person's acquired work skills may or may not be commensurate with her formal education. SOCIAL SECURITY RULING 82-41. And even if Lundy has acquired skills through education, there is no evidence what those skills might be. The Commissioner's position that they exist in the abstract is not sufficient. *See Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001); *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988); SOCIAL SECURITY RULING 82-41 (requiring that claimant's work skills be identified). *But cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004)(rejecting argument that ALJ who found existence of transferable skills must identify those skills when vocational expert testimony confirmed that unspecified transferable skills existed, and limiting application of Ruling 82-41 to decisions involving direct application of the Medical-Vocational Guidelines).

It is the Commissioner's affirmative burden at Step Five to "link up" the claimant's skills

with a proposed job, but the Commissioner failed to do so in Lundy's case. *See Jeffcoat*, 910 F. Supp. at 1195. Moreover, when issues of skills and transferability must be decided, the adjudicator is required to make express findings of fact and include them in the written decision. *See* SOCIAL SECURITY RULING 82-41, 83-11. The ALJ did not make any of the necessary findings because he assumed that transferability was not at issue, but logic dictates that a claimant who cannot perform past relevant work must have transferable skills that equip her to perform the new semi-skilled occupations that fall within her residual functional capacity. *See Stathis v. Sullivan*, 964 F.2d 850, 851-52 (8th Cir. 1992). At the very least, there are inconsistencies that must be resolved because the ALJ referred to a Guideline rule that pertains to a worker with no transferable skills, but then found other work available for Lundy based on vocational expert testimony that identified three suitable occupations—all of which are semi-skilled. *See id*.

The ALJ erred in finding that the existence and transferable nature of Lundy's job skills was not material to the determination of disability. The ALJ's failure to develop the record related to the issue of Lundy's skills and transferability of those skills also leaves the Commissioner's decision at Step Five unsupported by substantial evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 8, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 8, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 17, 2008.

 /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE